## BENJAMIN M. FIELD *et al.*

*v.*

## GEORGE W. FLANDERS

1. TRUSTEES — *trust property — rights of creditors.* Where a debtor makes an assignment of his property for the benefit of creditors, and prefers none of them, all of the creditors become vested with an equitable lien on the property for the satisfaction of their debts in *pro rata* proportions; and the fraudulent acts of the trustees of the debtor of other creditors or strangers to the transaction, would not deprive them of the right to participate in the fund. That can only be done by the acts of the creditors on the judgment or decree of a court of competent jurisdiction, or the legal acts of the trustees.

2. SAME — *their acts, how far binding on the creditors.* All of the acts of trustees within the scope of their authority conferred by the deed, and within the duties imposed by law, bind the creditors, the debtor and themselves; unauthorized acts do not, and they may be required to account for the misapplication of the fund or omission of duty. They are under no obligation to accept, but having done so, they must perform their duty in good faith to all parties in interest.

3. SAME — *their powers.* Such trustees may control the fund and convert it into money in the mode prescribed; may sue for property or money, and the determination of the court in such cases binds them and the creditors.

4. JUDGMENT — *against trustees, its effect.* A judgment against such trustees who have sued for property embraced in the assignment is binding upon the trustees and the creditors, unless it can be shown to have been the result of fraud and collusion, when it may be set aside and canceled in equity. It is not every fraud which will be regarded as ground for avoiding the judgment. And when collusion is charged, it must be satisfactorily proved before the court will intervene to afford relief.

APPEAL from the Superior Court of Chicago.

This was a bill in equity filed by Benjamin Field, Amzi Benedict and Peter W. Field, in the Superior Court of Chicago, against George W. Flanders, Nelson R. Norton, Pliney M. Perkins, Clark R. Norton, Orson Sheldon, for an account by the assignees of Sheldon, and for an account by Flanders for funds he had received by sale of the property assigned by Sheldon under execution.

Answers and replications were filed, and the case was heard and a decree rendered dismissing the bill, to reverse which, the case is brought to this court.

Messrs. HELM, TAYLOR & PENCE, for the appellants.

Messrs. McALLISTER, JEWETT & JACKSON, and Mr. E. S. SMITH, for the appellee.

Mr. CHIEF JUSTICE WALKER delivered the opinion of the Court:

This was a creditor's bill exhibited by appellants, against appellee and others, for an account by the assignees of Sheldon, of trust property, assigned to them by him for the benefit of creditors. Also, to compel Flanders to account for a portion of the trust fund which had come to his hands. The bill alleges, that Sheldon made a valid and legal assignment of his property for the benefit of his creditors, and appointed the two Nortons and Benedict trustees of the fund. That complainants at the time were, and still are, creditors of Sheldon. That Flanders, and Nelson R. Norton, one of the assignees, by fraud and collusion, procured a judgment in favor of the deputy United States marshal, and against the assignees, by which it was held, that the assignment was fraudulent and void, thereby ratifying his illegal act in having levied upon and sold a portion of the trust property for the satisfaction of a debt due to him and his partners. The bill prays that Flanders be required to pay the money received by him on his execution, for the benefit of the creditors of Sheldon, and that so much of the same as complainants may be entitled to receive on their debt against Sheldon be paid to them, and that the assignees be required to render an account. The bill makes Flanders, Sheldon and the assignees defendants, and waives their answers under oath. Flanders was alone served with process, but the other defendants were served by publication.

Flanders answered the bill, and alleges that the assignment was fraudulent and void, and denies all fraud or collusion in

procuring the judgment against the assignees in the suit against the deputy United States marshal for attaching the goods. The bill was taken as confessed against the other defendants.

A hearing was had in the court below, on the bill, answer, *pro confesso* orders, exhibits and proofs, and the court refused the relief and rendered a decree dismissing the bill, and against complainants for. costs. The cause is brought to this court to reverse that decree.

It appears from the evidence in this case, that Orson Sheldon, on the 26th day of October, 1857, made an assignment of all of his property, to Nelson R. Norton, Pliney M. Perkins and Clark R. Norton, for the benefit of his creditors. His indebtedness at the time was upward of $34,000. None of .his creditors were named, or preferred in the deed of assignment. The property transferred consisted of merchandise, notes and book accounts, together with some real estate; but no schedule of the personal effects was annexed to, nor were they particularly described in, the deed. Soon after the assignment was made, George W. Flanders, etc., merchants in Chicago, attached a portion of the goods thus assigned, claiming that the assignment was fraudulent, and intended to hinder and delay creditors. The writ was sued out of the United States Circuit Court for the State of Wisconsin. They afterward, in January, 1858, recovered a judgment against Sheldon in that proceeding, for the sum of $2061.31 damages and costs. An execution was issued on the judgment, and the goods thus attached were sold for the sum of $1239.94, of which sum plaintiffs in execution received on their judgment $1172.39, the amount remaining after paying the costs.

There is no dispute that Field & Co. and Flanders & Co. were creditors when the assignment was made by Sheldon, and, if it was valid, both had a right to participate *pro rata* in the fund. But, if it was fraudulent and void, then it was not binding on the creditors, and whoever procured prior liens on the property must be preferred in the payment of their debts. Or, even if the assignment was *bona fide* and valid, if defendant in error levied on and sold the property, and a court of competent

jurisdiction, having the requisite parties before it, held the assignment void, and the levy and sale under Flanders' attachment legal and binding, then he must be protected in the advantage he has acquired, unless that judgment was obtained by his fraud and collusion.

When the assignment was made and the trust accepted by the trustees, all of Sheldon's creditors became in equity vested with a right to participate in the trust fund in *pro rata* proportions. This interest, although only equitable, was vested, and they could not be divested of that right by the fraudulent acts of the trustees and their grantor. Their rights could only be extinguished by their own acts, the legal acts of the trustees, or by the adjudication of a court of competent jurisdiction. If the trustees, after accepting and entering upon the performance of the trust, should waste or misapply the fund, they would become liable to account to the beneficiaries in the same manner as other trustees. Like other persons acting in a fiduciary capacity, their acts are under the control of a court of equity. The fund in their hand, being a trust, is under the control of the law, and they are liable to account in equity.

But all of their acts within the scope of the authority conferred by the deed of trust, and within the duties imposed by the law, are binding upon the creditors, upon the person creating the trust, and upon themselves. But unauthorized acts do not bind the creditors or the person creating the trust. And either may require the trustees, by bill in equity, to account for a misapplication of the funds or other injurious omission or violation of duty. They are under no legal duty to accept the trust, and when they do so, it is entirely voluntary, and equity and good conscience requires that they should perform it in good faith to all parties in interest.

Being the representatives of the debtor and the creditors, the acts of the trustees, within the scope of their authority, must and will bind them. And it is on the principle that all privies must be bound by the acts of those under or through whom they claim. They are vested with the legal title, and all acts authorized by the deed or the law, in reference to that title,

will bind all parties having either legal or equitable claims on the fund. The trustees are authorized by law, as the holders of the legal title, to sue for and recover the property, and the judicial determination of such suits will bind them, the creditors and the debtor, precisely as parties and privies are bound by the judicial sentence of a court in other cases. This proposition is too plain to require the citation of authorities.

It remains to determine whether the judgment against the trustees in their suit against the deputy marshal, was obtained by fraud and collusion. While a judgment is conclusive upon parties and privies, and cannot be impeached, still, in equity, it may be vacated and set aside where it has been procured by collusion. But it is not every fraud which will produce that result. It is only in cases where there has been a fraudulent collusion to obtain the judgment which is injurious to parties or privies, that a court of equity will interfere to avoid the judgment. The mere concealment of facts by either party to the suit, which might be beneficial to the other, has not been regarded as such a fraud. For the repose of society, the ending of litigation and the security in titles to property, it is rendered imperatively necessary that stability should be given to the solemn adjudications of courts of justice. The law does not require a party to a suit to disclose facts in his knowledge beneficial to the other party, unless required to discover by answer to a bill. And such a failure to do so is not, of itself, sufficient ground upon which to invoke the aid of a court of equity. In this case, however, the bill alleges, that the trustees and defendant in error, by fraud, covin and collusion, had procured the judgment which decided the deed of trust to be fraudulent. This is of that species of fraud for which a court of equity will afford relief. But to do so, the evidence should be clear and satisfactory. Otherwise, no person could rest in security upon any right derived under a judgment or decree.

In support of the allegation of the fraudulent collusion, Sheldon testified, that Newton informed him that it was arranged that defendant in error should succeed in having the assignment held void. And his son swears substantially to the

same thing. But they fail to connect defendant in error with the arrangement, except by the statements of Norton, not made in his presence, and, so far as we can see, without his knowledge. Norton, on the contrary, denies in the most unequivocal manner, ever having made such a statement to them, and, moreover, that any such statement was ever made, or such an understanding was had in the case. The other trustees deny all knowledge of any such arrangement or understanding. The attorney of the trustees, who attended to the case for them, swears that the case was tried in the usual mode. That the trial was fair and proper so far as he knew. That he had no knowledge of the abandonment of the suit by the trustees at any time. He also states that he believed, both at the time of the trial, and when he gave his evidence, that the suit was decided on Sheldon's evidence; and that it clearly showed the assignment to have been fraudulent as to his creditors. And Sheldon also swears, that it was agreed before the trial that he should swear in such a manner as to decide the case in favor of the defense.

It is impossible that we should give any great weight to the evidence of a witness, who unblushingly states on the stand that he had agreed on a former occasion to swear so as to prove a deed fraudulent which he now swears to support as a legal, valid instrument. His son seems to have participated in a portion of the assets, after the assignment was made, in fraud of the rights of the creditors, and he fails to give a satisfactory account of the manner in which he paid for them. This detracts from the value of his evidence and greatly weakens its force. But when the evidence of the trustees and their attorney is considered, in connection with the evidence of the person to whom the case was referred to try the issue, who says the case was tried as cases usually are, we are convinced that it largely preponderates over the evidence of the two Sheldons. But even if this was not true, still defendant in error could not be affected in his rights by fraudulent agreements to which he was no party and of which he had no knowledge.

But to obviate this difficulty, the effort is made to connect

defendant in error with the fraudulent agreement, by proof of his declarations. Two of his former partners swear that he stated that he had agreed to give Norton three hundred dollars to permit them to recover a judgment against the trustees. On the contrary, a clerk of the firm swears that appellee said that he would have to pay about three hundred dollars for the costs of the suit; and that, as cashier of both the firm and of defendant in error, he had ample means of knowing if defendant had used money, or drafts had been so paid, and that he is certain that no such payments were made. This witness says he heard defendant in error frequently talk of the case in the presence of his partners, but in such conversations never heard him say that there was any such arrangement or any understanding about how the suit was to be determined. One of the partners says, that defendant in error said that the case had been submitted to referees. From this, although he was a partner and participating, so far as we can see, in the benefits to be derived from this bribery and fraud, he seems to have a very confused and imperfect idea of the case. It would appear from this evidence, that he supposed the case was to be determined by arbitration. Again, both partners, in addition to their imperfect knowledge of the case, admit that they were on unfriendly terms with appellee. From the tone of their evidence, it was barely necessary to state the fact, as it manifests bias against him. We are, therefore, rather inclined to give the weight in favor of the clerk than to these partners, evidently hostile in their feelings to defendant in error, and, as we infer, part owners at the time of the claim, and now swear that their partner was engaged for his and their benefit, in polluting the channels of justice, and fail to give the least excuse for failing to expose it and prevent its consummation.

The commissioner who tried the case swears, that he neither knew nor suspected that such an arrangement existed, but that the case was tried as such cases usually are. The trustees all deny the collusion, their attorney swears that he knew of none, and the case was properly and fairly tried so far as he knew. The clerk of appellee states that he had the most ample means

of knowing it, if the bribe had been paid to Norton, as he had the control of the private funds of defendant in error, and that he has no knowledge of the payment of the sum to Norton. Considering all of this evidence we think it rebuts all reasonable presumption that the judgment was procured by fraud and collusion.

The complainants failing to sustain the allegations of their bill, the court below did right in refusing the relief sought, and in dismissing their bill. And the decree must be affirmed.

*Decree affirmed.*