WILLIAM E. ATWATER*

*v.*

THE AMERICAN EXCHANGE NAT. BANK OF CHICAGO *et al.*

*Filed at Ottawa October 29, 1894.*

1. INSOLVENCY—*the term defined.*   Insolvency, as applied to a person, firm or corporation engaged in trade, is inability to pay debts as they fall due in the usual course of business.

2. PRIVATE CORPORATION—*status of property when insolvent—duty of directors.*   The assets of an insolvent corporation are a trust fund for the payment of creditors, and the directors, in case of insolvency, become trustees for the creditors, and cannot give away or sacrifice the property, even with the consent of the stockholders.

---

*The appeals of American Exchange Nat. Bank of Chicago, Victor D. Gowan & Co., and Harrington & Goodman, were considered with that of Atwater, and are decided in the opinion.

3. SAME—*directors cannot be preferred.* Directors can receive no preference or advantage from their insolvent corporation over others, as creditors, and the corporation cannot submit to judgment by confession in their favor.

4. SAME—*stockholder must act in good faith.* A stockholder, contracting with the corporation, is held to a larger measure of candor and good faith than a stranger.

5. SAME—*blending claim with that of director.* One permitting his judgment claim against an insolvent corporation to become blended with a debt due to a director of such corporation, will occupy no better position than such director.

6. SAME—*preference in which director has an interest.* A judgment confessed by an insolvent corporation in favor of a creditor, in which a director has a part interest, will be postponed in favor of a second judgment, even though the creditor in whose name it was taken has a *bona fide* claim covered by part of such judgment.

7. SAME—*legal remedies against, not suspended by insolvency.* Creditors may sue at law, and establish liens upon the corporate property, at any time before equity has acquired jurisdiction, notwithstanding the corporation is insolvent.

8. SAME—*execution of judgment note—authority presumed.* Where the general financial manager of a corporation makes a judgment note in the course of business, he will be presumed to have acted within the scope of his powers, even though no resolution of the directors is shown, and a stranger dealing with him without notice of want of authority will be protected.

9. SAME—*acquiescence in unauthorized act.* An unauthorized act done in behalf of a corporation, (such as the execution of a warrant to confess judgment,) if knowingly acquiesced in by the corporate authorities, becomes binding.

10. SAME—*marshaling assets in equity.* Equity will administer the assets of an insolvent corporation upon the principle that equality is equity, but will respect legal rights and liens previously acquired. *Beach* v. *Miller*, 130 Ill. 162, explained.

11. JUDGMENTS—*fraudulent in part—how treated in equity.* The rule that equity, on application to set aside a judgment, may allow that part of it to stand which is found to be just, does not apply where the judgment is obtained and used for the fraudulent purpose of hindering other creditors.

12. SAME—*confession must be for debt due.* Under the Statute of Frauds a confession which conflicts with the rights of other creditors can not stand unless it is for "a debt *bona fide* due."

13. SAME—*not enjoined for lack of service.* A court of equity will not enjoin a judgment for want of service of process unless it is shown the judgment is inequitable or unjust, the question of service being for the court of law.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Superior Court of Cook county ; the Hon. EGBERT JAMIESON, Judge, presiding.

Prior to February 9, 1887, there existed in the city of Chicago a corporation under the name of "The Chicago Custom Clothing Company." During the time this company had been in operation, it had borrowed of Stewart Spaulding $6250, a part of which was his own money and a part of which is claimed to have been that of William E. Atwater ; also the sum of $3750 of George D. Whittle, making in all the sum of $10,000 due said three parties. It was also indebted to eastern merchants in the sum of about $6000. On the date named, a new corporation was organized under the laws of this State, under the name of Klemm & Co., with a capital stock of $25,000, and it succeeded said clothing company, receiving all its property and assuming all its debts. To this arrangement said Spaulding, for himself and Atwater, and Whittle, agreed. The shares of stock in the new company were $100 each. Of these, one Charles H. Potter subscribed for 125 shares, William L. Johnson 63, and Henry J. Klemm the remaining 62. No money was paid by either of said subscribers for said shares, but they were treated as paid for by turning over the assets of the clothing company to the new corporation. Subsequently, Spaulding and Whittle each purchased from said original subscribers five shares of said stock, and credited on the indebtedness due each of them the sum of $500, in payment therefor. Thereupon Spaulding became president and Whittle secretary of said Klemm & Co., which offices they continued to hold until the end of its business career. In payment of the remaining $9000, due Whittle and Spaulding for himself and Atwater, eight promissory notes were executed by Klemm & Co., payable to itself, and endorsed by said Potter. These were delivered to Spaulding and Whittle, each

taking a part thereof in proportion to the several amounts due them. It was understood by all parties that Potter should pay these notes, but he failed to do so, and they were returned to the company, which, on the 11th of November, 1887, by a resolution of its board of directors, executed its judgment note, payable to said Atwater, for the whole amount of said indebtedness of $9000. On the 26th of that month judgment by confession was entered on that note, in the Superior Court of Cook county, for the amount thereof, and attorney's fees, making in all $9462.52, in favor of said Atwater and against said Klemm & Co. On this judgment execution immediately issued, and sheriff Matson levied the same on the entire assets of the corporation and took possession thereof. Two days later judgment was entered by confession, in said court, in favor of the American Exchange National Bank of Chicago, against said Klemm & Co., on a judgment note executed by William L. Johnson, treasurer, and endorsed by said Potter, for $3500, the amount of said judgment being $3661. Execution also issued on this judgment on the same day it was entered, and was levied on said company assets, subject to said former levy. The judgment note on which this last judgment was entered, was executed on the 12th day of October, 1887. On said 28th day of November, after all its property was in the hands of the sheriff under said executions, Klemm & Co., by resolution of its board of directors, executed judgment notes to Harrington & Goodman for $929.04, and to Victor D. Gowan & Co. for $268.34, and these parties immediately took judgments by confession thereon, and had executions issued and levied on said goods. Two days thereafter Rodman B. and William P. Elleson, on behalf of themselves and all other creditors of said Klemm & Co., began this proceeding by bill in chancery in the said Superior Court, making the said Charles H. Potter, William L. Johnson, Henry J. Klemm, Harrington & Goodman, Victor D. Gowan and Stewart Spaulding, William E. Atwater and George

D. Whittle, and said American Exchange National Bank, and said Canute R. Matson, sheriff, parties defendant. The prayer of this bill was, that the affairs of said corporation might be wound up and its assets applied to the payment of its debts; that the corporation be dissolved, and a receiver appointed to take charge of its property; that the statutory liability of its stockholders and directors might be enforced; that each of said confessed judgments be set aside, and the executions issued thereon and the levies made thereunder quashed, and said company property turned over to the receiver to be appointed, and applied in payment of the debts of said company.

Atwater, Spaulding and Whittle filed a joint answer to this bill, and Klemm & Co., the bank, Harrington & Goodman, and Victor D. Gowan & Co., each answered severally, the last three also filing cross-bills. To these cross-bills answers were duly filed, and replications thereto. The issues formed between the several parties by these several pleadings are as follows: The complainants in the original bill claim that the assets of Klemm & Co. should be applied *pro rata*, in payment of all the debts of the company. This is denied by Atwater, who represents himself, Spaulding and Whittle, also by said bank, Harrington & Goodman, and Victor D. Gowan & Co., and the corporation itself. Atwater insists by his answer that all of said property should be applied in payment of the indebtedness due himself and said other two parties. The corporation, by its answer, does the same, but that is in effect the answer of Spaulding and Whittle. The general creditors deny that right, as does also each of said parties filing cross-bills. The bank insists upon the invalidity of the Atwater judgment, and claims all of said property in payment of its judgment. The other judgment creditors deny the validity of either of said prior judgments, and claim the right to have their judgments satisfied in full out of said property to the exclusion of other creditors.

Before the cause came on for hearing in the Superior Court a receiver was appointed, and the sheriff ordered to turn over to him the assets of the company, which was done, the court reserving the question as to the validity of said judgments. Afterwards the receiver was ordered to sell the property, which he did. Before the final hearing an order was made allowing the receiver an additional sum of $500 for his services, and $195 to counsel for the complainants in the original bill.

By its final decree the Superior Court declared the Atwater judgment invalid, as against the complainants in the original bill and said bank. The judgment in favor of the bank was sustained, and the amount thereof being found to exceed the whole amount of money in the receiver's hands belonging to the corporation, he was ordered to turn the same over to it, taking its receipt therefor. Atwater prosecuted an appeal to the Appellate Court for the First District, both from the final decree and said order of allowance to the receiver and counsel for complainants. Errors were also assigned on the record in that court on behalf of Harrington & Goodman and Gowan & Co.

By the judgment of the Appellate Court the decree of the Superior Court was reversed and the cause remanded, with directions to hear evidence as to said allowance to the receiver and solicitor, and fix the amount thereof accordingly; that an account be taken of the claims of all creditors of said Klemm & Co., and the funds in the receiver's hands applied ratably in payment thereof. From that judgment this appeal is prosecuted.

Messrs. SWIFT, CAMPBELL & JONES, for the American Exchange National Bank of Chicago.

Messrs. MARSTON, AUGUR & TUTTLE, for Victor D. Gowan and Harrington & Goodman :

As soon as a corporation becomes insolvent, its directors become trustees for all the creditors, and their fidu-

ciary relation will not allow them to aid a director to obtain an advantage over another creditor.   *Beach* v. *Miller,* 130 Ill. 162; *Ogden* v. *Murray,* 39 N. Y. 202; *Richards* v. *Insurance Co.* 43 N. H. 263; *Stout* v. *Milling Co.* 13 Fed. Rep. 802.

A corporation's acting power is its board of directors. This board, as a body, may delegate certain duties to the different officers, but all the powers of the officer are limited by the terms of the grant.   *Stevens* v. *Carp River Co.* 57 Mich. 427; *Stokes* v. *Pottery Co.* 46 N. J. L. 237; *England* v. *Dearborn,* 141 Mass. 590; *Adams* v. *Cross Wood Manf. Co.* 27 Bradw. 313.

The fact that the corporation was insolvent does not affect the validity of the acts of the corportion.   The corporation is not dissolved by insolvency.   *Town* v. *Bank of River Raisin,* 2 Doug. 530; *Glass Co.* v. *Langdon,* 24 Pick.; *Sargent* v. *Webster,* 13 Metc. 497.

Corporations, unless restricted by their charters or the general statutes, may make assignments and prefer one or more creditors.   Cooke on Stockholders, 691, and cases cited.

But however the law may be in other States, our own Supreme Court has passed upon the question.   *Reichwald* v. *Hotel Co.* 106 Ill. 439.   See, also, *Drury* v. *Cross,* 7 Wall. 299; *Corbett* v. *Woodward,* 5 Sawy. 417; *Sargent* v. *Webster,* 54 Mass. 497.

Messrs. CRATTY BROS., MACLAREN & JARVIS, for William E. Atwater:

It is well settled by the weight of modern decisions that a corporation cannot avail of the defense of *ultra vires* where the contract has been in good faith performed by the other party to it, and the corporation has had the benefit of the contract and of the performance.   *Bradley* v. *Ballard,* 55 Ill. 413; *Darst* v. *Gale,* 83 id. 136; *Watson* v. *Railway Co.* 9 L. R. Eq. 28.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

Upon the former hearing of this cause we held that the judgment in favor of William E. Atwater was invalid, and that he acquired no lien upon the assets of Klemm & Co. by virtue of the levy of execution under that judgment. We see no reason for retreating from that conclusion, nor is any fault found with it by the petition for rehearing filed herein. No rehearing has been asked for by Atwater, or by any of the other creditors, except The American Exchange National Bank of Chicago. The Bank, whose petition for rehearing has never been replied to by any of the other parties, asked a rehearing solely upon the ground that its judgment was held by the former opinion of this Court to have acquired no prior lien upon the assets of Klemm & Co. by virtue of the levy of the execution thereunder, but to have been entitled merely to share *pro rata* with all the other creditors in such assets after the setting aside of Atwater's judgment. The rehearing was granted, in order that we might consider more fully the question whether the judgment of the Bank was entitled to priority over the other creditors, or to a *pro rata* share with them in the distribution of the assets. Before passing upon this question, it may be proper to re-state the reasons which have induced us to regard the judgment in favor of Atwater as invalid.

Insolvency, as applied to a person, firm or corporation engaged in trade, is inability to pay debts as they fall due in the usual course of business. That the corporation known as Klemm & Company was insolvent on November 11, 1887, when it executed the judgment note for $9000.00 to Atwater, upon which the judgment by confession in his favor was entered up on November 26, 1887, is clearly established by the evidence in this case. Indeed, it had been unable to pay its ordinary expenses for some time prior to November 11, 1887. The indebtedness represented by the judgment note which it gave to Atwater on that

day was owned by Stewart Spaulding and George D. Whittle, as well as by Atwater. The two former owned more than two-thirds of said indebtedness. Spaulding and Whittle were both directors in the corporation; and Spaulding was its president and Whittle its secretary. Its insolvency was well known to them.

There can be no doubt, that the judgment, rendered by confession in favor of Atwater, was fraudulent and void, as against the Bank and the other creditors of the corporation, to the extent to which the indebtedness included in it was owned by Spaulding and Whittle. When a corporation becomes insolvent, its assets are regarded as a trust fund for the payment of its creditors; and the directors, who were the agents or trustees of the stockholders during the solvency of the corporation, occupy a fiduciary relation towards the creditors when the corporation becomes insolvent. Consequently, the directors of an insolvent corporation cannot give away the company's property gratuitously, or sell it at a sacrifice in the interest of others even with the consent of the stockholders; and if the directors are themselves creditors, they cannot receive any advantage or preference in the payment of their claims, at the expense of other creditors. (*Beach* v. *Miller*, 130 Ill. 162). In the application of this doctrine, we have held that an insolvent corporation cannot execute a judgment note and submit to judgment thereon in favor of its directors. (*Roseboom* v. *Whittaker*, 132 Ill. 81).

We think that, under the circumstances of this case, Atwater stands in no better position than Spaulding and Whittle. Let us examine the facts. The indebtedness to Spaulding and Whittle was originally the indebtedness of The Chicago Custom Clothing Company, and amounted to $10,000.00. When the corporation, Klemm & Company, was organized, and the assets of the Chicago Custom Clothing Company were transferred to it, it assumed the debts of the old corporation, and, among others, the debt due to Spaulding and Whittle. This debt was reduced

from $10,000.00 to $9000.00 by a credit thereon of $1000.00, and Klemm & Company executed eight notes, 3 for $2000.00 each, 2 for $1000.00 each, 2 for $417.00 each, and one for $166.00, payable, not to the order of Spaulding and Whittle, or of Spaulding, Whittle and Atwater, but payable to the order of the corporation itself, Klemm & Company. Atwater was not known in the transaction. He did business in Connecticut and lived in New York, and had advanced some money to Spaulding. Spaulding states, that, when he made the loan to the Chicago Custom Clothing Company, he included in such loan not only his own money, but the money in his hands belonging to Atwater. He was the agent of Atwater, so far as the investment of this money was concerned. Atwater's funds were mingled with his funds, and Atwater had an undisclosed interest in the claim of $10,000.00. Hence, the credit of $1000.00 upon that claim was a credit upon what was due to Atwater, as well as upon what was due to Spaulding and Whittle. Why was this credit given? Spaulding and Whittle each took 5 shares, or $500.00 of stock, amounting in all to $1000.00, in the new corporation of Klemm & Company. They paid nothing for this stock except by a reduction of their debt from $10,000.00 to $9000.00. If then a part of the debt of $6250.00, which was held by Spaulding, belonged to Atwater, a part of the stock, which Spaulding accepted as a payment on that debt, also belonged to Atwater. Hence, Atwater cannot be regarded otherwise than as a stockholder in Klemm & Company. There is nothing to show that the stock issued to Spaulding was credited exclusively upon that portion of the debt due to himself, and not also upon that portion due to Atwater. The $6300.00 of stock issued to William L. Johnson, and the $6200.00 of stock issued to Henry J. Klemm, were transferred to Charles H. Potter, without any consideration. Potter thus became the owner of $24,000.00 of the stock, which was all of it except the $1000.00 held by Spaulding and Whittle. The eight notes

above referred to were all endorsed or guaranteed by Potter. Johnson was the treasurer of Klemm & Company, and he and Potter and Klemm were directors, they and Spaulding and Whittle constituting the board of directors.

On October 12, 1887, Klemm & Company were indebted to said Bank in the sum of $3500.00 for money borrowed by it through Johnson and Potter, and on that day Klemm & Company by Johnson as treasurer executed to the Bank a judgment note, upon which it afterwards entered up judgment on November 28, 1887. On November 11, 1887, the directors met, and, with a view of being in a position to get ahead of the Bank, cancelled the eight notes, releasing Potter from his guarantee thereof, and executed the judgment note for $9000.00 to Atwater. Johnson, who was not only treasurer of the corporation, but its financial manager, and who had organized both the old corporation, and its successor, the new one, swears that he had never heard until November 11 of Atwater as being interested in the debt due to Spaulding and Whittle. Potter, Spaulding and Whittle were a majority of the board of directors, who authorized the execution of the note to Atwater. Potter had an interest in consenting to the making of that note, because he was thereby released from his liability as guarantor, and Spaulding and Whittle sought to obtain an unlawful preference by the use of Atwater's name. Atwater, who was himself a stockholder as well as a creditor, permitted his name to be used by these directors, one of whom was his confidential agent and friend, as a cover for the purpose of obtaining for them and for himself a fraudulent preference. A court of equity cannot allow him to reap advantage from such a transaction.

A stockholder, in making a contract of any kind with the corporation of which he is a member, is in some sense dealing with a creature of which he is a part and holds a common interest with the other stockholders, who, with him, constitute the whole of that artificial entity, and is

properly held to a larger measure of candor and good faith than if he were not a stockholder. (*Twin Lick Oil Co.* v. *Marbury*, 91 U. S. 587; *Beach* v. *Miller, supra*).

` Our statute provides that judgment may be confessed for "a debt *bona fide* due." (2 Starr & Cur. Ann. Stat. page 1828, sec. 65). It follows that, if the judgment is in excess of the real debt so far as to interfere with the rights of other creditors, it is fraudulent and cannot stand. (1 Black on Judgts. sec. 69). Here, the judgment in favor of Atwater is for $9462.52, and the execution issued under it was levied upon the assets of Klemm & Company on November 26, 1887, before any other creditor had reduced his claim to judgment. If allowed to stand the Atwater judgment will exhaust all the assets of the corporation, and leave nothing for the other creditors. It is true, that, where the judgment debtor applies to a court of equity to set aside a judgment against him, equity will not necessarily grant relief as to the whole judgment, but may restrain the enforcement of such part as may be inequitable and allow it to be executed as to the residue. (2 Freeman on Judgts. sec. 516; *Hale* v. *Bozeman,* 60 Miss. 965; *Booth* v. *Kesler*, 6 Gratt. 350; *Barrow* v. *Robichaux*, 14 La. Ann. 203). But where a judgment is confessed, and execution levied for such an amount that subsequent judgment creditors find nothing to levy on, a combination between the parties having been proved, fraud will be established. (1 Black on Judgts. sec. 69; *Nusbaum* v. *Louchheim*, 1 Atl. Rep. 391). Such judgment is regarded as being confessed for the purpose of hindering, delaying or defrauding other creditors, and is void under the statute of frauds. (*Nusbaum's Appeal*, 1 Atl. Rep. 392). A judgment may be founded upon an honest debt, and yet it may be obtained under such circumstances and used for such purposes as to make it a fraud. Where such a judgment is entered up as a fraudulent cover to protect the defendant's property from his other creditors, or to put it into the hands of creditors who have no right to ap-

propriate it to their own debts, courts will deal with it as they would deal with any other fraudulent contrivance. If a creditor permits a judgment—rendered in his name for a large amount due to parties who have no right to the entry of such judgment in their favor—to be used for a fraudulent purpose as against subsequent creditors, he will be postponed until after they are paid, even though a portion of the debt embraced in the judgment, is honestly due to him. (*Mech. Nat. Bank* v. *Burnet Manf. Co.* 33 N. J. Eq. Rep. 486 ; 12 Am. & Eng. Enc. of Law, page 147*a*, note 5 ; *Field* v. *Flanders*, 40 Ill. 470 ; *Carr* v. *Miner*, 42 id. 179). As was said in the opinion delivered upon the former hearing: "Atwater's debt was so blended with that of Spaulding and Whittle, the directors, and his dealings with the corporation were so far the dealings of Spaulding, that he must be held to occupy no better position than they do ; his rights and theirs, we must presume, were voluntarily, on his part, put upon the same footing."

The execution, issued upon the Atwater judgment, was levied upon the assets on November 26, 1887. The execution, issued upon the judgment of the Bank, was levied upon said assets on November 28, 1887, subject to Atwater's levy. The Atwater judgment and execution being set aside, we are inclined to think, upon further considera- tion, that the execution of the Bank must take effect from the date of its levy, and that the judgment of the Bank is entitled to priority over the other creditors, whose judgments were subsequently rendered, or who obtained no judgments. This is in accordance with the doctrine of the case of *Roseboom* v. *Whittaker, supra.* There, a judg- ment by confession against an insolvent corporation was set aside as being fraudulent and void because it was rendered in favor of directors of the corporation ; and it was held, that certain attachment creditors, who had levied their writs of attachment subject to the execution issued upon the void judgment, were entitled to priority

of lien as against the unsecured creditors. It was claimed there, as it is claimed here, that, upon the insolvency of the corporation, the assets became a trust fund for the payment of all the debts *pro rata*, but it was held, that the mere insolvency of the corporation could not have the effect of depriving creditors of their legal remedies, and that they had a right to sue at law and establish specific liens upon the property attached or seized on execution, provided they should do so before a court of equity acquired jurisdiction over the assets of the insolvent corporation for the purpose of administering upon them. When such jurisdiction attaches, it will become exclusive, and equity will administer the assets upon the principle that equality is equity. But legal rights and preferences, which are acquired before equity takes jurisdiction, will be respected in the distribution of the assets. Here, the executions of Atwater, and of the Bank, and of Harrington & Goodman, and of Victor D. Gowan & Co., were all levied before the original bill in this cause was filed, and, therefore, before a court of equity was asked to take the assets into its hands.

We do not regard the case of *Beach* v. *Miller*, *supra*, as conflicting with the doctrine thus announced in the case of *Roseboom* v. *Whittaker*, *supra*. In the *Miller* case judgment by confession was not rendered against the insolvent corporation in favor of a director who was also a creditor, but there the insolvent corporation transferred its property to Miller, one of its directors, in payment of a debt due to him, and he had actually taken possession of such property, when subsequent judgment creditors seized it upon their execution; and it was held that the creditors could not hold it, because it had passed beyond the reach of their execution and into Miller's hands charged with a trust, which a court of equity might enforce in favor of all the creditors of the corporation. It was there said, however, that if the judgment creditors had levied on the property while in the hands of the cor-

poration, and before it passed into the hands of Miller, they would, under such circumstances, have been entitled to hold it.

The point is made that the judgment note given to the American Exchange National Bank was executed by Klemm & Company by its treasurer, Johnson, and that the treasurer had no power under the by-laws to sign a power of attorney to confess judgment without express authority from the board of directors, and that such authority was never given to Johnson.

The evidence is clear, that Johnson was the business and financial manager of the corporation; that Klemm & Company deposited with said Bank, and borrowed money from it, and did business with it through Johnson; that Johnson was held out to the Bank as having the right to represent it; that the Bank had no notice of any by-law, which limited or restricted Johnson's authority; that the debt, for which the note was given, was a *bonâ fide* debt, due for money borrowed; that the money so borrowed was at once deposited in said Bank, and checked out in the ordinary course of business, and used to pay acceptances and bills of Klemm & Company; that the directors of Klemm & Company knew of the note given by Johnson to the Bank within less than a month after its execution, and did not repudiate it, or notify the Bank that it was made without authority, but continued to do business with the Bank as before, and at one of their meetings held on November 9, 1887, passed a resolution impliedly recognizing the binding force of the note. In the light of these facts, the appellants, who are subsequent judgment creditors as between themselves and the Bank, can not be permitted to attack the judgment of the Bank upon the ground stated.

Where a note and warrant of attorney are executed in the name and under the seal of the corporation, it will be presumed that they were executed by the authority of the corporation. Even though, in such case, no resolu-

tion or vote of the board of directors is shown as author-
ity for such execution, yet where the officer executing the
note is the general manager of its financial business and
makes the note in the ordinary course of business, it will
be presumed that he was acting within the scope of his
powers; and a stranger, dealing with him in good faith,
on the faith of his apparent powers and without notice of
facts showing. that his act was unauthorized, may hold
the corporation liable. (*McDonald* v. *Chisholm*, 131 Ill. 273).

Even if the note was originally made without author-
ity, we think that the facts show a ratification of it by
the corporation.   Where a principal, with knowledge of
all the facts, adopts or acquiesces in the acts done under
an assumed agency, he cannot be heard to afterwards
impeach them under pretence that they were done with-
out authority.   Where a principal neglects to disavow
such an act, he makes it his own.   If an unauthorized act
is done on behalf of a corporation, yet if the corporate
authorities, having the right to object to the Act, know-
ingly acquiesce in it, it will be binding upon the corpora-
tion.   (Morawetz on Priv. Corp. secs. 618, 630; Taylor on
Priv. Corp. sec. 211).

As between the Bank and Klemm & Company an issue
was made by the pleadings in the trial court, as to
whether the power of attorney to confess the judgment
was executed without authority or not.   That issue was
decided against Klemm & Company, and they have not
appealed.   The appellants here are attacking the judg-
ment collaterally by their cross-bill in a court of equity,
upon the ground that the treasurer had no authority to
execute the warrant of attorney.` They do not charge the
Bank with fraud, or that its judgment was collusively
confessed without the existence of a *bonâ fide* indebted-
ness.   The defect alleged amounts merely to a want of
service of process. The remedy for such a defect is in the
law court rendering the judgment, or by writ of error.
A court of equity will not enjoin a judgment for such a

defect and where it is not shown that the judgment is in-equitable or unjust.   (*Burch* v. *West*, 134 Ill. 258).

After the levy of the Bank's execution and on Novem-ber 28, 1887, executions were issued upon the judgments of Harrington & Goodman and Victor D. Gowan & Co. and placed in the hands of the sheriff.   The liens of these executions came next in order to that of the Bank, and, if any surplus were likely to remain after paying the judgment of the Bank, it should be applied upon these judgments.   But there can be no surplus.   At the date of the decree on August 7, 1890, the total amount in the hands of the receiver was only $3047.39, while the judg-ment in favor of the Bank was $3661.00 with interest at six per cent per annum from November 28, 1887, amount-ing altogether to more than $4000.00.   It, therefore, makes no practical difference, so far as any of the appellants are concerned, whether the trial court erred or not in al-lowing $195.40 to the solicitor of complainants for dis-bursements made by him, and $500.00 to the receiver for services.   If the $695.40 thus allowed were disallowed, it would not go to any of the appellants under the views here expressed, but would be applied upon the judgment of the Bank.   Inasmuch, however, as the Bank does not complain of these allowances, and its counsel state in their brief that they submitted the matter of their allow-ance to the trial court and are willing to abide by the decision of that court, we are not inclined to disturb the order providing for the payment of these amounts.

For the reasons here stated the judgment of the Ap-pellate Court is reversed, and the decree of the Superior Court is affirmed.

*Judgment reversed and decree affirmed.*