[No. 2274.]

BURSON v. BOGART.

1. **Agency—Evidence—Declarations of Agent.**

Neither the fact of agency nor the extent of authority can be proved by the declarations of the alleged agent.

2. **Agency—Evidence.**

Evidence examined and held not sufficient to establish agency so as to make defendant, the alleged principal, liable for goods purchased from plaintiff by the alleged agent.

3.   **Statute of Frauds—Promise to Pay Debt of Another—Land-lord and Tenant.**

Where plaintiff sold to a tenant goods and charged them upon his books to such tenant, a promise by the landlord to pay such account, made without consideration, was a promise to pay the debt of another within the statute of frauds, and was not binding unless made in writing.

4.   **Same—Instructions—Not Based on Evidence.**

Where defendant verbally promised to pay to plaintiff the store account of his tenant after the goods had been sold and charged to the tenant, and there was no evidence of any consideration passing from plaintiff to defendant or that plaintiff released the tenant and accepted defendant as his debtor, an instruction to the effect that where there is a consideration for the promise to pay, it is unnecessary for it to be in writing and that to warrant a finding for plaintiff it must appear that he accepted defendant and released the tenant, was prejudicial error.

5.   **Practice—Evidence—Discretion of Court.**

The form of questions and method of examination of witnesses are largely within the discretion of the trial court, and unless there is an arbitrary abuse of such discretion, the trial court's action in such matters will not be held to be reversible error.

*Appeal from the District Court of Costilla County.*

Mr. Ira J. Bloomfield, for appellant.

Mr. James W. Shields, for appellee.

Maxwell, J.

This case originated in the court of a justice of the peace of Costilla county, where judgment was rendered in favor of the plaintiff. Defendant took an appeal to the county court. By stipulation the case was transferred to the district court of Costilla county, where the case was tried to a jury which rendered a verdict against the defendant for the sum of $156.40. Motion for a new trial was overruled and judgment entered upon the verdict. Defendant appeals.

There being no pleadings in the case the issues

must be determined from the facts as developed upon the trial. It appears that the suit was to recover upon an account for goods sold and delivered by the plaintiff, Bogart, to one Cobb, under the following circumstances. The account was opened June 22, 1898, in the name of R. M. Cobb and wife, and was so charged and entered upon plaintiff's books. Against the objection of defendant plaintiff testified as follows:

"Q. When Mr. Cobb came to you for goods what, if anything, did he say about Mr. Burson authorizing him to get goods?

"A. Mr. Burson told him to buy the goods, and that he would pay for them either at my place or any place."

About the time the account was opened or, at any rate, July 1, 1898, Cobb became the tenant of Burson, appellant, under a written lease containing the usual covenants, upon an annual rental "of two-fifths of all crop grown." Burson went east about September 7, 1898, and did not return until May, 1899, during all of which time Bogart was selling the goods to Cobb, for the recovery of the price of which this action was brought. Upon Burson's return in May, 1899, he was presented with the account, and a demand made for a settlement of the same. Several such demands were made and several interviews were had between Bogart and Burson with reference to the matter. At one of these interviews two women who testified at the trial were present, and while there are slight discrepancies in their testimony, neither Bogart nor these two witnesses testified that Burson ever admitted that Cobb was his agent for the purchase of the goods; and on the contrary Burson testified positively that Cobb was not his agent, and that he had never so admitted. The testimony of the two witnesses above referred to was to this effect: "Mr.

Bogart said to Mr. Cobb, 'Wasn't Mr. Burson to pay the bill?' and Mr. Cobb said 'Yes.' Mr. Burson was present at the time." Attempt was made to prove the ratification of Cobb's agency by Burson, but the testimony fell far short of accomplishing the purpose. Testimony was also introduced to the effect that Cobb took several wagon loads of wheat from Burson's granary, which he used as seed wheat upon Burson's land and for which he subsequently settled with Burson; that he bought seed oats which Burson paid for and charged to Cobb; that he drove several head of cattle, the property of Burson, from one pasture to another. This testimony was introduced, as it seems, for the purpose of establishing the fact that Cobb was acting as the general agent of Burson during his absence. Burson positively denied any such agency, and denied that Cobb was his agent for any purpose whatever except such agency as might arise by operation of law out of the relation of landlord and tenant. Bogart testified that he presented the account to Burson shortly after his return from the east and was allowed to testify, against the objection of defendant, that he, Burson, "did not seem to object to them." After Burson's return from the east $100 was paid by Cobb on the account. This payment was made by means of a bank check drawn by Burson to the order of Cobb, endorsed by Cobb, delivered by him to Bogart and by Bogart applied as a credit upon the account. Cobb was not a witness at the trial as he had left the country at that time.

The above sets forth substantially all of the testimony introduced at the trial to establish the fact that Cobb was the agent of Burson in the matter in controversy. The agency of Cobb was relied upon by the plaintiff in the court below as one of the grounds upon which he could recover. It is assigned as error that the court permitted the plaintiff, Bogart, to tes-

tify against the objection of defendant as to the statement or declaration made by Cobb at the time the account was opened.

"It is well settled that neither the fact of agency nor the extent of authority can be proved by the declarations of the alleged agent."—*Lee S. M. Co. v. Englebach,* 18 Colo. 106.

This is a well-settled principle, in support of which many authorities might be cited. There was no evidence introduced at the trial to prove the agency of Cobb other than the question and answer above quoted, except the testimony of the two women as to a conversation between Bogart and Cobb, at which Burson was present, and certain acts of Cobb in the purchase of seed grain, driving the defendant's cattle from one pasture to another and other unimportant and immaterial matters, which evidence seemed to have been introduced upon the theory that such acts tended to prove a general agency, or that the defendant had held Cobb out to the public as his agent, and that thereby the plaintiff was led to believe that such agency existed. Such evidence, however, was not competent or sufficient to prove the agency relied upon, and formed no basis for the introduction of the declarations of the alleged agent above referred to, against the objection of defendant. In the absence of other competent testimony of the existence of the agency the declarations of the alleged agent are inadmissible. In the introduction of this testimony there was error prejudicial to the defendant. There is nothing in the record in support of the contention that Burson ratified the acts of Cobb; on the contrary, it abundantly appears that so far as this controversy is concerned, he explicitly and repeatedly repudiated such acts.

Another ground upon which the plaintiff sought to recover was the alleged promise of the defendant

to pay the account. This promise, if made, was a verbal promise, made after the defendant returned from the east. The plaintiff and two other witnesses in his behalf testified to the promise having been made by the defendant. The witnesses did not agree as to the date when this promise was made, plaintiff testifying that it was made shortly after Burson's return, Miss Bunn testifying that it was made in July or August. The other witness fixed no date. From all the evidence the fair inference is, that the conversation in which the promise is alleged to have been made took place at or about the time the account was closed—July 1, 1899. The defendant Burson emphatically denied that he ever made any such promise. Assuming that the promise was made, it was a collateral and not an original undertaking, as it is undisputed that the goods were charged upon the books of plaintiff to Cobb, or Cobb and wife, that Cobb had made several payments on the account, that there was no consideration moving from the promisee to the promisor in support of an original undertaking, nor is there any testimony whatever in the record to the effect that the plaintiff released Cobb and took the defendant as his debtor.—*Greene v. Latcham,* 2 Colo. App. 416.

In view of the foregoing it was error for the court to charge the jury, of its own motion, as follows:

"Provided, however, that where there is a consideration for the promise to pay that takes such case out of the statute of frauds and makes it unnecessary for such promise to pay to be in writing; but such consideration must really pass, and to charge one for the debt of another it must appear that the creditor accepted the promisor for the debt and released the original debtor. In this case, if you find against the plaintiff on the question of agency, then to warrant

you in finding for the plaintiff on the question of a promise to pay, it must appear not only that the promise was made, but that the plaintiff accepted defendant and released Cobb therefor.''

This error was prejudicial to the defendant, and the instruction should not have been given, for the reason that there was no evidence in the record upon which such an instruction might have been based.

There are numerous other assignments of error as to the form of questions and method of examination of witnesses, and as to the refusal of the court to give instructions requested by defendant, none of which seem to be worthy of discussion. So far as the form of questions and method of examination of witnesses is concerned, it is sufficient to say that these matters are largely within the discretion of the trial court, and unless there should appear to be an arbitrary abuse of such discretion, the same will not be held to be reversible error.

For the reasons above assigned the judgment should be reversed and the cause remanded for further proceedings not inconsistent with the opinion herein expressed.                                *Reversed.*