## UNION GOLD MINING CO. *v.* ROCKY MOUNTAIN NATIONAL BANK.

The doctrine of this case, as reported *ante*, p. 248, approved.

CORPORATIONS — *officers.* The superintendent of a mining company has no authority, by virtue of his office merely, to borrow money on the credit of the corporation. The president of the corporation has no authority, as such, to undertake, in the corporate name, for the repayment of such an unauthorized loan.

*Stockholders — powers of.* Where the corporate powers are vested in a board of directors or trustees, the proceedings of a stockholders' meeting cannot be shown to establish a disavowal, by the corporation, of the acts of one who, without authority, has assumed to contract for it. The delegation of power to the trustees is exclusive.

EVIDENCE — *corporate record.* Oral evidence of the proceedings of a corporate meeting, of which a record is shown to be in existence, is inadmissible.

To the introduction of such record, it must be shown that the entries were made by the proper officer ; and generally speaking, this officer must himself be produced, or if he be dead, his handwriting must be proven. Testimony of a stockholder that he was present at the meeting and that the paper produced is a correct record of the proceedings, does not render the paper admissible.

When a corporation relies upon its own record, strict proof of its authenticity is required.

*Declarations of agent* are not admissible to establish the agency; but the agency being otherwise shown, or testimony sufficient to warrant the jury in finding either an original agency, or subsequent ratification, being produced, the declarations of the alleged agent made during and within the scope of his authority then become admissible to establish other facts in issue in the same case.

PRINCIPAL AND AGENT — *evidence.* The habit and course of dealing between the parties is admissible to establish the relation of principal and agent.

*Ratification by silence.* One for whom another has, without authority, assumed to act, must not only disavow and repudiate what has been done but must also give notice of such repudiation to those to be affected thereby, if he would avoid the inference of assent, which the jury are otherwise at liberty to indulge.

In order to raise the inference of acquiescence from the silence of the alleged principal, it is necessary that he should be fully informed of the unauthorized transaction ; but notice thereof to another agent, where the matter is within the scope of his agency, affects the principal though not in fact communicated.

In this case S., assuming to be the agent of a mining corporation, borrowed money in its name without authority, and expended it, partly in mining

upon the property of the company, and partly in developing and mining upon adjoining premises, belonging in part to B., the president and general manager of the company, and in part to S. himself. It was sought to charge the company with the loan, upon the ground that having been informed of the acts of S. it had omitted to repudiate them. No officer or member of the company except B. was informed of the expenditure of a portion of the moneys upon the property of B. and S. The notice to B. was held notice to the company itself.

In the same case, the total loan amounted to $20,000 and more, and was obtained by successive overdrafts at the plaintiff's bank; when the overdraft amounted to something over $10.000, S. gave promissory notes in the corporate name for that sum, and this was credited to the defendant in the account. The notes were not, however, accepted as payment and this action was brought as for money lent for the whole sum. At a previous trial the notes were surrendered and canceled; prior to such surrender no member of the defendant corporation had notice of the execution of the notes, and there was evidence tending to show that the bank and S. had deliberately concealed the fact from the officers of the mining company. *Held*, that the ignorance of the corporation as to this was not material, as to the question of ratification.

INSTRUCTIONS. Each separate proposition is to be read and construed in connection with the whole of the charge.

JURORS — *challenge for favor*. The determination of the lower court upon the question of fact, not subject to review.

*Propter affectum. Semble*, if the juror has formed and expressed a fixed and determinate opinion as to the matters in issue, the challenge is of this character.

An opinion formed on mere rumor or uncertain report, and which has not taken firm hold upon the mind, shall not disqualify.

THIS case was twice before in this court, and is reported in 1 Col. 533, and *ante*, p. 248.

The judgment last before given, in the district court, having been reversed at the term of 1873, the cause was remanded, and at the November term following of the Jefferson district court, was tried before the chief-justice and a jury.

One Perrin, called as a juror and examined by counsel as to his competency, deposed that he had, some three weeks previously, received from one E., who sat as a juror at the former trial, a detail of what E. alleged to be the facts in the case, and upon this had formed an opinion as to the merits of the controversy; that he had also expressed this opinion; that he still entertained it, and thought it would require

evidence to remove it. Examined by the court, the juror deposed that his conversation with E. occurred as they were going home together, and occupied about an hour; that E. made no comment upon the testimony, and expressed no opinion as to the credibility of witnesses; that he had had no conversation with any officer of either corporation, and had no acquaintance with any of them; that his conversation with E. was not characterized by any warmth of discussion; that he still recollected and could recount the substance of what E. had told him, and thought it would have some influence upon his mind; the question being repeated, he expressed himself as uncertain whether it would balance any thing in the evidence or not; that if he should be called as a juror he would endeavor to do justice between the parties ; that he understood the duty of a juror to be to try the issue impartially upon the evidence, though what he had heard had created a prejudice in his mind.

The defendant's challenge to the juror for cause was overruled by the court, and an exception being reserved, this opinion of the court was assigned for error.

The testimony given in behalf of both plaintiff and defendant in great part the same as at the previous trial.

It was shown, however, that the work done by Sabin upon the premises belonging to Mr. Becker consisted of two levels ninety or ninety-five feet in length, which were stoped out overhead, sixty to eighty feet in height ; the expense of this work Sabin estimated to be one-half as much as that of the work done upon defendant's property in the same time, and the production of ore in the same proportion. The work done by S. upon his own premises consisted of a level fifty feet in length. The expense of all this work, and of operating the mill, were carried to one account.

The alleged agent, Sabin, was examined in vacation before a commissioner selected by the parties.

In the course of his examination the witness deposed that the gold obtained by his mining was placed to the credit of the defendant in plaintiff's bank, and that he drew checks against it, subscribed in defendant's name by himself as

agent. A motion to suppress this part of the deposition as secondary was overruled. Another witness, who had at one time kept the books in which Sabin's accounts were entered, was permitted to testify, against plaintiff's objection, that the vouchers taken by S. in his business were expressed to be for money received from defendant. Others who had receipted to S. for money paid by him on account of mining operations, were permitted to give like testimony against defendant's objection.

The same witness was permitted to testify as to a certain account therein, entitled "Bates' Lode"; that every thing paid out for this mine and for the milling of the ore was placed to the debit of the account, and that the proceeds of the gold obtained were placed to its credit. All these rulings were assigned for error.

Defendant proved that when the overdraft amounted to something over $10,000, Sabin gave two promissory notes for so much of the amount, and this sum was credited to the account.

The officers of the bank swore, however, that they were not regarded as valid at the time of accepting them, and there was no evidence that they were received in payment absolute.

The credit given for the notes was finally erased, and in the account rendered prior to the institution of this suit no mention was made of the notes, nor was the fact of their existence ever communicated to any officer of the defendant before the last trial. The evidence tended to show that this omission to inform the officers of the mining company was by preconcert between Sabin and the bank officers.

Defendant offered to read from a book, which was spoken of as the corporate records of the mining company, what purported to be the record of proceedings had at a called meeting of the trustees in 1865, at which Sabin was appointed superintendent, and resolutions adopted defining his duties. The record was not authenticated, however, otherwise than by the testimony of Mr. Becker, who deposed that he was present at the meeting, and that the record offered was a

correct record of the proceedings had. The book also contained what purported. to be the record of proceedings of the trustees, by which Sabin's resignation was accepted, and the record of proceedings had at a stockholders' meeting, · held in 1869, by which the act of Sabin in contracting the indebtedness in question was repudiated. These entries were also offered authenticated solely by the testimony of Mr. Becker ; the officer who made the entries not being called, and the testimony being rejected, the defendant reserved an exception. The jury found the issues for the plaintiff, and assessed its damages in $30,358.22; and judgment having been given upon this verdict, the defendant prayed this appeal.

Mr. Hugh Butler, Mr. G. B. Reed, Mr. E. Wakely, for appellant.

Mr. W. R. Gorsline, Mr. H. M. Teller, Mr. J. Q. Charles, for appellee.

Mr. Justice Wells dissented.

Hallett, C. J.    Three trials, resulting in the same verdict, have been had in this cause, and the facts, so often determined upon substantially the same evidence, may now be accepted as well established. We have also considered the rules of law which should govern the action, and have now to ascertain whether those rules were correctly applied at the last trial. Certain questions, considered and determined at former hearings, may be laid out of view, as they are not now, in any manner, open to investigation in this court. Such is the corporate existence of appellee, and its right to maintain an action for money loaned, exceeding, in amount, ten per cent of its capital stock. Such, also, is the alleged misappropriation of the funds of the bank by its officers, which, it was supposed, would render the transactions between the parties fraudulent, and thus defeat the action. The authority of appellant to borrow money, not

being expressed in its charter, was also denied, but we were of the opinion that, as debts might be created in prosecuting its enterprises, which the corporation would be legally bound to pay, money might be borrowed for the same purpose, if the corporation was not expressly prohibited from doing so. We further declared that the fact of Sabin's agency was material to be shown, in order that it might appear whether he had authority to borrow money, and, if he had no such authority, then as affecting the ratification of his acts by appellant. Objections to the evidence offered to prove the fact, now again earnestly urged, were then discussed, and our conclusion was that, in the absence of better evidence to prove an agency, resort may be had to facts which tend to show recognition, by the principal, of the alleged agent's authority. That an agency may be proved by the habit and course of dealing between the parties, is clear upon principle and authority. *Franklin* v. *The Globe Insurance Company,* 52 Mo. 461.

The circumstance that Sabin was in possession of appellant's mine, carrying on business in its name, and was in communication with its president, most certainly tends to prove the agency. In addition to this, he testified that he was agent to appellant, and, if his declarations during the continuance of the agency were drawn out, it was not for the purpose of establishing that fact, but to explain his dealings with the bank. It is not contended that an agency may be proved by the declarations of the alleged agent, but the fact being otherwise established, his declarations, made during the continuance of the agency, may be given in evidence to prove other facts. *Rowell* v. *Kline,* 44 Ind. 291. The theory advanced in the opinions heretofore pronounced, that appellant must be liable upon its ratification of Sabin's acts, if at all, was adopted upon the trial below.

It has never been claimed that, in virtue of his authority as superintendent of the mine, Sabin could borrow money in appellant's name, or that the promise of its president to pay the money obtained by Sabin would be binding upon

appellant. But it was supposed that appellant, being advised of what had been done by its agent, in its name, and failing to disavow his authority within a reasonable time thereafter, 'might thereby manifest its assent to the transaction. It was not, however, contended that appellant would be estopped to deny its liability upon any equitable principle, but, merely, that its failure to respond to appellee's importunate demand would be evidence of assent for the consideration of the jury. To repeat the arguments and again refer to the authorities upon which this conclusion was founded, would serve no useful purpose. But it is said that the law was not thus stated to the jury, inasmuch as they were told that, if the defendant did disavow the acts of Sabin in borrowing the money from the plaintiff, it was incumbent on the defendant to notify the plaintiff of such disavowal, and to prove the giving of such notice. This part of the charge should be read in connection with another, in which the jury were advised to find as matter of fact, whether, by its failure to disavow the agency, appellant assented to the act of borrowing the money. So read, it means only, that to make its disavowal effectual, and prevent the inference which the jury were at liberty to draw from its silence, appellant must not only deny the authority of the agent, within a reasonable time, but notify appellee of the fact. It was not said that appellant would be concluded by omitting to disavow Sabin's agency, within a reasonable time after notice, or to give notice of its disavowal, but that such omission was evidence of acquiescence and assent, upon which the jury might determine the fact. The authorities cited in our former opinion abundantly support this as the correct principle, and, in addition thereto, reference may be made to *Kelsey* v. *The National Bank of Crawford County*, 69 Penn. St. 426. That was a case in which the cashier of a bank, with the knowledge and approval of the directors, but without express authority for that purpose, had offered a large reward for the detection of thieves, who had stolen money from the bank. The plaintiff, having acted upon the proclamation of the cashier, sought

to recover the reward, and was resisted upon the ground that the cashier had no authority from the bank to make the offer. But it was held, that, if the bank had notice of the offer, and did not dissent from it, ratification and assent must be presumed. It was also held, that it was not necessary to give notice to the directors, when sitting in their official capacity. If they were personally cognizant of the offer made by the cashier, it was their duty to call a meeting of the board, and disavow the act if they were unwilling that the bank should be bound by it. It is true that the plaintiff had acted upon the proclamation of the cashier, and, therefore, the bank could not deny his authority without injustice. But the rule laid down is quite as applicable to the case in which the silence of the principal is regarded as evidence of his assent to the act of the agent, which the jury may or may not accept as sufficient to prove the fact as to that in which the principal is estopped to deny the authority of the agent, upon the ground that, in so doing, he would perpetrate a fraud upon him, or upon a third party. In both cases, the principal must disavow the unauthorized act of his agent, within a reasonable time, but the consequence of his not doing so is not the same in each. In one case the conduct of the principal may be interpreted by the jury as evidence of his assent to what has been done in his name, and, in the other, he is estopped to deny the authority of the agent. In either case his conduct affords evidence of an intention to ratify, but it differs in degree and in the principle of law by which it is tested. If, therefore, in the case cited, it was necessary that the bank should disavow the act of its cashier, in order to avoid liability, in the case at bar it was equally necessary that appellant should repudiate the debt created by its agent in order to avoid the inference which might be drawn from its silence. Notice, to appellee, of the disavowal was a necessary part of the act itself. In no other way could appellant break the silence which the law regards as affording evidence of an intention to ratify. No error appears in this part of the charge, and other portions of it appear to be in harmony with the principles

heretofore announced as governing the action.   Further
support to our conclusion, that notice to the president of
appellant, and his undertaking to bring the matter before
the board of directors, was sufficient to charge the corpora-
tion with notice of Sabin's dealings with the bank, may be
found in the case last cited.   In that case, it was said, that, if
the directors were personally cognizant of the offer made
by the cashier, it was their duty to call a meeting of the
board and disavow the act.   So here, the officers of the
bank were seeking to obtain satisfaction of their demand
against appellant, through its president, and, as we have
repeatedly declared, it was the duty of appellant to act
upon the information thus obtained, if it desired to repel
any presumption that might be drawn from its silence.   A
kindred principle controls the objection, that a portion of
the work at the mine was upon property owned by Sabin
and Becker, adjacent to appellants.   The president of the
corporation had full knowledge of the character of the
work, and much of it was done by his direction.   It is said
that notice to an agent of a corporation, of any matter under
his management and control, will affect the corporation,
although not actually communicated to the latter.   *The
Pittsburg Railway Company* v. *Ruby*, 38 Ind. 322.   The
president was allowed to exercise general authority respect-
ing the operations at the mine, and, according to what we
have heretofore said in this case, the company must be
responsible for his management.

   The pretense that this work was done for the purpose of
improving the property owned by Sabin and Becker is not
supported by the evidence.   In one of his letters to Sabin,
Becker, who was then president of appellant, directed him
to extend his adits, so that more ore could be reached, and
this was done quite successfully, half the valuable ore being
obtained from No. 3, west.   Upon that claim the vein was
stoped out from sixty to eighty feet in height, a circum-
stance which is altogether inconsistent with the theory that
the level was run for development only.   In the west half
of Discovery claim but little was done, probably for the

reason that it was unproductive; and, as to the whole, we were entirely correct in our last opinion in saying that the mining done upon the property of the president and agent of the company was quite as much the act of the company as that done upon its own property. Reconsideration of the authorities, upon which we determined that proof might be offered to show that the money obtained from the bank was expended in the mine, and that it was beneficial to appellant, as affecting the question of ratification, has not shaken our conclusion, and we have nothing to add to what was said upon that point, when the case was last before the court.

Two promissory notes, made by Sabin, in appellant's name, and payable to appellee, were offered in evidence by appellant for the purpose of showing payment of the amount therein specified, and also as a material part of Sabin's dealings with the bank; and it is urged that the court should have received them. That no portion of the debt was discharged by them is a proposition that it is not necessary to discuss, for it is well settled, " that nothing can be justly considered as payment in fact but that which is in truth such, unless something else is expressly agreed to be received in its place." *The Kimball*, 3 Wall. 37. Here there was no agreement that the notes should be accepted in payment of the sum for which they were given, or of any sum; and, whether Sabin had or had not authority to execute them, the rule is the same. Nor is it perceived that they were necessary to explain the position of the parties. Appellee was not seeking to charge appellant upon these notes, and they had been canceled in open court, at a previous term. If, in giving them, Sabin assumed to act as appellant's agent, he had already done so in creating the indebtedness to the bank; and this, at the utmost, was a promise, in another form, to pay an indebtedness which then existed. As appellee was not relying upon the notes, it is difficult to perceive how they could affect the questions at issue.

The minutes of proceedings of two meetings of the board of directors, and one meeting of the stockholders of appel-

lant, offered in evidence upon the trial below, and excluded by the court, were not shown to have been made by the proper officer of the company. The president of the corporation testified that he was present at the meetings and that the record was correct, but the secretary, by whom the minutes were kept, was not called, nor was his absence explained. Whether all of the facts recited in the minutes might be proved by the books of the corporation, is a question of some difficulty, which it is not necessary to discuss. The most important of those facts was the rejection of appellee's demand and the disavowal of Sabin's agency, which is alleged to have occurred at a meeting of the stockholders, held April 5, 1869 ; that such rejection and disavowal is a corporate act, of which the record would be the best memorial, is plain enough ; and, therefore, oral evidence as to the proceedings of that meeting was properly excluded. Angell & Ames on Corporations, § 679. But proof that the book was kept by the corporation as a record of its proceedings, was not a sufficient authentication without further evidence to show that the entries were made by the proper officer. *Whitman* v. *Granite Church*, 24 Me. 236. Generally, it appears to be necessary to call the clerk or officer who made the entries, if he is living, and, if he is dead, to prove his handwriting. *Stebbins* v. *Merrill*, 10 Cush. 27, and *Union Bank* v. *Knapp*, 3 Pick. 196. Obviously a corporation, relying upon its own record to establish its acts, with all the evidence of correctness at its command, should be held to strict proof, and that offered by appellant was clearly insufficient. Another reason for rejecting the proceedings of April 5, 1869, is that the affairs of the corporation were in the hands of trustees, or directors, and the stockholders had no authority in the premises. *Gashwiler* v. *Willis*, 33 Cal. 12. Doubtless the stockholders might instruct the trustees as to the course to be pursued, but the power of the corporation was vested in the trustees, and they only could express its will. In conclusion upon this point, it should be observed that all evidence tending to prove repudiation of the debt, or disavowal of

Sabin's authority, by appellant or its officers, communicated to appellee or its officers, was before the jury, and, if it was not accepted by them, it was probably because it was strongly controverted by other testimony.

Examination of the jurors Nutt and Perrin disclosed pretty nearly the same facts, and we shall necessarily determine the competency of both of them, in considering the objection to Mr. Perrin, who sat at the trial. The record does not state whether the challenge was for principal cause or to the favor, but, as the ground of objection was that the juror had formed and expressed a disqualifying opinion upon the merits of the case, we may assume that it was for principal cause. If we should regard the challenge as made to the favor, the decision of the court upon the evidence as to the supposed bias or partiality of the juror, would not be open to review in this court. *Solander* v. *The People*, February term, 1873, and *Sanchez* v. *The People*, 22 N. Y. 147. Considered as a challenge *propter affectum*, the question is, whether the juror had formed and expressed a fixed and determinate opinion as to the matter in issue, for, if his opinion was conditional only, it was ground for challenge to the favor. *Pringle* v. *Huse*, 1 Cow. 436, note. And, upon this point, it is to be observed, that the juror obtained his information mainly from one Evans, who sat as a juror at a former trial, and, when asked by the court whether Mr. Evans' statement would have any influence upon his mind in the trial of the cause, he answered, " I think it would." The question was then repeated in another form : " You think you would be governed, to some extent, by what he said ?" To which the juror replied, " If he related to me the facts as he considered." From this it is apparent that the juror had no opinion, or only such opinion as one gets from the casual statement of another, as to the truth of what he had heard, but, if such statement of facts was correct, he then had an opinion as to the justice of the case. This is a hypothetical or conditional opinion, such as any one will form when the facts out of which a controversy has arisen are stated in his hearing. Formerly it was supposed

that almost any report of the facts in the case would so affect the mind of one who heard it that he would be incompetent to sit at the trial of the same case, but since newspapers and telegraphs have come into use, as a means of spreading intelligence of all events, it has been found necessary to adopt a different rule. Of that necessity the case at bar affords an excellent illustration. Twice tried in a small community, it is doubtful whether so many as twelve men, who had never heard of the case, could have been found in the county at the time of the third trial, and, if they could have been found, it is more doubtful whether they would have been fit persons to decide the issue. We now say that an opinion, founded upon rumor or uncertain report, which has not taken firm hold of the mind, shall not disqualify, and our legislative assembly has said that, in criminal cases, no opinion whatever shall disqualify, if the court shall be satisfied that the juror will render an impartial verdict. 9 Sess. 94.

This rule relates more to the quality of the opinion than to the evidence upon which it is based, for the real question is, whether the juror stands indifferent between the parties. The general rule, that he who has heard rumors and reports only, is competent, and he who has had a full relation of the facts from witnesses, or parties, is disqualified, is intended as a guide to general results, and is not without exceptions. One man may form a fixed and decided opinion upon vague rumor, while another remains quite indifferent, after hearing all the evidence. Much depends upon the intelligence, candor and mental constitution of the juror, his associations with, and relations to, the parties, and, therefore, the court, where the cause is tried, having an opportunity to observe his manner, and hear his answers to questions, can judge more correctly as to his fitness than any appellate tribunal. Much reliance is put upon his own estimate of his ability to resist any impressions that he may have received, and, although it is entitled to great consideration, it is not always controlling. One who confidently asserts that he can disregard all that he has heard respecting a case,

may be no better able to do so than another, who is more regardful of his duty, or less confident of his strength in resisting impressions which he has received. It is urged that Mr. Perrin was of the opinion that what he had heard from Mr. Evans would affect his conclusions in the case, but, evidently, these expressions fell out of a scrupulous and tender care for the duty which he was called to perform. He was not acquainted with any of the officers of either corporation, and he felt no interest in the result of the controversy. He had not talked with any witness, nor had the credit of any of them been discussed in his presence. It does not appear that he was acquainted with any of the witnesses, and all the information that he had respecting the matters in issue, was the gossip of social life concerning a notable cause. He was willing to discharge his duty as a juror, and he perfectly understood what that duty was. But for his fear as to the effect of the report which he had heard, upon his mind, no one would doubt his competency, and, considering all the circumstances, it is impossible to believe that such report would create in his mind a fixed and determinate opinion, dangerous to the rights of the parties. For an elaborate discussion of the views here suggested on this point, counsel are referred to *Jackson* v. *Com.*, 23 Gratt. 919.

Other questions presented in the briefs of counsel have been discussed in the first and second opinions filed in this cause, and, as we now find no error in the record, the judgment must be

*Affirmed.*