[No. 4038.]

GERMAN AMERICAN INDEMNITY COMPANY v. STATE MERCANTILE BANK.

1. EVIDENCE—*Admissions—By Conduct.*  One for whom another, without authority, has assumed to act must not only disavow and repudiate what has been done, but must also give notice of such repudiation to those to be affected thereby, if he would avoid the inference of assent, which the court or jury are otherwise at liberty to indulge. (248)

2. CORPORATIONS—*Affected by Knowledge and Conduct of Officers and Directors.*  The president and treasurer of a corporation borrowed of a bank, in the name of the corporation a sum of money which they applied to discharge a judgment against the corporation and the treasurer.

The bank having brought its action upon the promissory note of the corporation which was executed by the president and treasurer to evidence this loan, the corporation contended that the judgment had been recovered for an individual liability of the treasurer, and that it had been collusively permitted by the president and treasurer, in order to satisfy the individual liability of the treasurer, at the expense of the corporation. But it appeared that during the pendency of the action in which this judgment was recovered, at least seven out of the thirteen directors of the corporation, its president, secretary, executive committee, and general counsel, had knowledge thereof, and made no question as to the propriety of its position as defendant; that the judgment came to the knowledge

of the secretary, who was also a member of the board, and of the executive committee thereof, and was "generally known about the office of the company;" that at least one of the directors, and the secretary, who was also a director, knew of the loan, and the purpose to which the money was applied, and that no action was taken at the time to repudiate it. In view of these and other circumstances tending to show authority in the president and treasurer to borrow money in the name of the corporation it was *held* that the directors had, or should have had, full knownledge of the action of its officers in the premises, and that whether their conduct in permitting it to stand unquestioned was attributable to mere inattention, or to some other cause, the corporation was as fully bound towards those who acted without knowledge of any want of authority in the corporate officers as if the requisite power had been directly conferred. (245-248)

*Error to Denver District Court.* HON. JOHN H. DENISON, Judge.

MR. HORACE G. BENSON for plaintiff in error.

MESSRS. ZIMMERHACKEL & AVERY for defendant in error.

BELL, J.

This action grows out of a decree obtained in the District Court of the City and County of Denver jointly against S. N. Mitchell and The German American Indemnity Company, plaintiff in error herein, ordering and directing the above named, defendants in the action, to return to one L. K. Mulford, plaintiff therein, a certain two-thousand-dollar promissory note, together with a duly executed release of a certain trust deed securing said note; that they pay to him the sum of $50 as attorneys' fees, and the sum of $150 for services rendered by him to said company as auditor; and that he have judgment for his costs. By stipulation signed by counsel of record for the parties, the defendants agreed to waive their right of appeal and were granted a sixty-day stay of execution, at the expiration of which, E. C. Harrell, president and general manager of the company, and said S. N. Mitchell, its treasurer, negotiated a loan of $2,550 from The State Mercantile Bank, defendant in error herein, for the purpose of satisfying the decree, at the demand of the plain-

tiff therein, and gave as security for said loan a certain nego-
tiable promissory note, dated April 19, 1912, signed by The
German American Indemnity Company, by E. C. Harrell,
Pres., and S. N. Mitchell, Treas., and by E. C. Harrell and
S. N. Mitchell in their private capacities. Upon this note,
the present action was instituted by the bank and resulted in
a judgment in its favor in the sum of $3,008.97.

The defenses set up in the instant case by the defendant
company, plaintiff in error, were that neither Harrell as presi-
dent, nor Mitchell as treasurer, nor either of them in any
capacity, had any power or authority to execute the note in
suit or any instrument purporting to bind the company for
the payment of money; that the note was the result of a
conspiracy between them to defraud the company in the Mul-
ford case by agreeing between themselves to permit an ad-
verse judgment to be entered therein and to satisfy the same
with the funds of the company, thereby discharging the per-
sonal debt of Mitchell to Mulford; that these facts were known
to the plaintiff bank at the time the loan was made; and that
the note in suit was made out of the due and regular course
of business and was without consideration.

Certain by-laws of the defendant company and proceed-
ings of its board of directors were offered and received in
evidence to prove the powers, duties and authority of its of-
ficers, and they show that, upon the resignation of said Har-
rell as secretary and general manager of the company, No-
vember 24th, 1911, during the pendency of the Mulford case,
a rising vote of thanks was tendered him by the board of di-
rectors of the company for his efficient services during the
year previous, and he was immediately and unanimously
elected president of the company to serve for the unexpired
term; that, at the same time, the by-laws of the company were
amended, to take effect immediately, and such amendments
made it the duty of the president "to sign all deeds, bonds,
certificates of stock, checks *and documents of any description
of the company* and to have general supervision of all meet-

ings, either stockholders' or directors' meetings.  *  *  *
To secure the services and fix the remunerations of agents,
employes, and assistant officers for the general promotion and
welfare of the company (which latter duties were theretofore
imposed upon the secretary and general manager) *and shall
have entire charge of the affairs of the company."* (The
italics are mine.)  The records and by-laws thus introduced
further show that, by the amendment, the office of general
manager was thereupon abolished, in so far as it was con-
nected with the secretary, and that the same became merged
in the office of the president; that the by-laws in conflict with
said amendments were declared null and void as they prev-
iously read; and that the president, secretary and treasurer
should constitute an executive committee to act in the ab-
sence of the board of directors and to have the same relation
to the board that the vice-president does to the president.  On
January 9th, 1912, said Harrell and Mitchell were again
elected president and treasurer of the company respectively.

The evidence developed the facts that Harrell and
Mitchell had negotiated paper with the plaintiff bank at vari-
ous times and on or about November 14th, 1911, had borrowed
$1,000 on the company's note, which was paid by the com-
pany's check, February 6th, 1912, and payment thereof cred-
ited to the company; that The German American Trust Com-
pany also loaned the defendant company, August 19th, 1911,
the sum of $1,000 on its note endorsed by said Harrell and
Mitchell, which was paid October 30th, 1911; and that notes
had been given to a bank in Trinidad.  All of those transac-
tions occurred previous to the date of the note in suit, but it
seems that some of them, the loans at least, were never en-
tered upon the books of the defendant company, although an
entry was made therein showing a deduction of one thousand
and fifteen or twenty dollars from the account of the company
at The German American Trust Company Bank, without any
explanation being given therefor, and the acts and conduct
of the officers in the matters were never questioned by the

company. There were 13 directors of the company, a majority of whom, as we understand the record, resided or were frequently out of the city, and it seems that full charge of the entire affairs of the company was placed in the hands of said Harrell, its president and general manager. At the time of making the loan in suit, the plaintiff bank had been dealing with the defendant company for a period of from 18 to 24 months, and Harrell represented to it that, as the highest officer of the company, he had authority to sell paper, negotiate loans and transact the business of the company; and that the purpose of the loan was to take care of the Mulford judgment. Upon inspection and the strength of past transactions, in part at least, and the representations of Harrell, the loan was made, and the amount thereof, at Harrell's request, was placed to the credit of his personal account and fully checked out by him in the satisfaction of the Mulford judgment, which was thereupon fully satisfied of record.

Shortly before the Mulford suit was instituted, his attorneys sent a letter to the defendant company therein and copies thereof to Wm. M. Bowman, E. S. Shumway, E. C. Harrell and S. N. Mitchell, its officers and directors, stating that, if Mulford's claim was not settled promptly, suit would be entered against the company and Mr. Mitchell. The case was pending from April 11th, 1911, to December 5th, 1911, before trial, and, at the request of counsel of record for the defendants therein, Mr. F. F. Schreiber also appeared for the defendants at the trial and examined the pleadings. He was, at that time, a stockholder in the defendant company and subsequently, January 9th, 1912, was elected its general counsel and on May 20th, 1912, was elected president and general manager. The court held the case under advisement until February, 1912, when it made the decree hereinbefore referred to.

Dr. M. D. Brown was secretary of the defendant company from March, 1911, to May 20th, 1912, was a member of its board of directors and, together with Harrell and Mitchell,

constituted the executive committee, which, according to the by-laws, occupied the same postion to the board of directors as the vice president does to the president.    He testified that he "was around the office of the company a good deal, (and) was more or less familiar with its affairs;" that "E. C. Harrell was secretary and general manager (of the company) exercising general supervision and control over its *finances and affairs;*" that he, the witness, knew of the Mulford judgment; and that said judgment was generally known of about the office of the company.    It was further shown that he, Harrell, Mitchell, Schreiber, William A. Cook, W. N. Bowman and William Nolan, all directors of the defendant company during the pendency of the Mulford case, had knowledge thereof; and that the fees of the attorneys of record for the defendant company therein were paid by the company's check; but, notwithstanding all this knowledge on the part of at least seven of the directors of the company, its president, secretary, treasurer, executive committee and general counsel, the board of directors took no action in regard to the matter nor questioned the position of the company as a defendant in the case. Neither did it repudiate the act of Harrell and Mitchell in executing the note in suit, although it was shown that, beside those two, William A. Cook, a director, and Dr. Brown, secretary and a director, knew that the loan had been made to satisfy the Mulford judgment.    Nor did anyone in behalf of the company repudiate the loan or the execution of the note, except Mr. Schreiber, who, on or about the 21st day of May, 1912, as the then president of the company, but without any direct authority from the board of directors in the matter, informed the plaintiff bank that he did not believe the officers of the company had any authority to execute a note of the kind in suit.

Therefore, from the foregoing recited facts, it is apparent that the directors of the defendant company had or should have had full knowledge of the acts in controversy, and, whether through inattention or otherwise they permitted them

to stand, they are as much bound to those who were not aware of any want of authority in the officers in the matter as if the requisite power had been directly conferred: *Beers v. Phoenix Glass Company*, 14 Barb. 358, 361. One for whom another has, without authority, assumed to act, must not only disavow and repudiate what has been done, but must also give notice of such repudiation to those to be affected thereby, if he would avoid the inference of assent, which the court or jury are otherwise at liberty to indulge: *Union G. M. Co. v. Rocky Mt. Nat. Bank*, 2 Colo. 565; *Breed v. First Nat. Bank*, 4 Colo. 481; *Breed v. First Nat. Bank*, 6 Colo. 235.

It cannot be successfully urged that the acts of Harrell and Mitchell were so concealed that the company or its directors had no knowledge thereof or were deceived thereby. The fact that Mitchell and the company were sued jointly was sufficient in itself to have put the directors on their guard and justify an inspection, which might have resulted in an exposure of any improper or unauthorized conduct on the part of its officers, Mitchell or Harrell; but, aside from this, the entry in the company's books showing an unexplained deduction of over a thousand dollars in its bank account at The German American Trust Company, the several payments by company checks hereinbefore mentioned, and the actual knowledge on the part of Directors Cook and Brown of the loan in question and its purpose, were likewise sufficient to put the board on inquiry if it had used ordinary care in looking after the interests of the company.

The acts under consideration having been performed by Harrell and Mitchell with knowledge thereof on the part of a number of the directors and employes of the company, and without any objection therefrom, it cannot and ought not to be heard to complain: *Union M. Co. v. Rocky Mt. Nat. Bk.*, 2 Colo. 248-257; *Union G. M. Co. v. Rocky Mt. Nat. Bk.*, 2 Colo. 565; *Oro, etc., Co. v. Kaiser*, 4 Colo. App. 219, 225, 226, 35 Pac. 677; *Lit. Pitts. M. Co. v. Little Chief M. Co.*, 11 Colo.

223, 17 Pac. 760, 7 Am. St. Rep. 226; *Beers v. Phoenix Glass Co.,* 14 Barb. (N. Y.) 358, 361; *Chestnut St. Trust & Savings Fund Co. v. Record Pub. Co.,* 227 Pa. 235, 75 Atl. 1066, 136 Am. St. Rep. 890; *Judell v. Goldfield Realty Co.,* 32 Nev. 351, 108 Pac. 455; *Houston Land & Loan Co. v. Danley,* (Tex. Civ. App.) 131 S. W. 1143; *La Normandie Hotel Co. v. Security Trust Co.,* 38 App. D. C. 187; *Talladega Ins. Co. v. Peacock, Adm'r,* 67 Ala. 253, 263; *Western Co. v. Bank,* 23 Colo. App. 143, 146, 148-151, 128 Pac. 476; *Whitaker v. Kilroy,* 70 Mich. 635-638, 38 N. W. 606; *Crowley v. Genessee M. Co.,* 55 Cal. 273, 276; *Spangler v. Butterfield,* 6 Colo. 356, 363; *Bank v. Chapman,* 122 Tenn. 415, 123 S. W. 641; *Atwater v. Am. Exchg. Nat. Bk.,* 152 Ill. 605, 619, 38 N. E. 1017; *McDonald et al. v. Chisholm,* 131 Ill. 273, 281, 23 N. E. 596; *Ford et al. v. Hill,* 92 Wis. 188, 197, 66 N. W. 115, 53 Am. St. Rep. 902.

The note was executed on behalf of the company in order to raise sufficient funds to satisfy a joint and several judgment then standing against it in favor of Mulford, and the moneys realized upon it were applied to this end; but it is claimed that the judgment was obtained in fraud and upon a claim owing personally by Mitchell and that, therefore, the note executed in satisfaction of said judgment was wrongfully executed by Harrell and Mitchell and was given without consideration. It has been shown, however, that part of the judgment was for a sum of money due as salary from the company to Mulford for services rendered as auditor and for $50 attorneys' fees alleged to have been agreed upon between the parties in that action. None of the evidence in the Mulford case is abstracted, and, therefore, it is impossible, and, in fact, it is unnecessary, for us to determine or inquire into the merits of the judgment rendered therein. The proceedings leading thereto were known to the officers and a number of the directors of the company; Mr. Schreiber, who later became its general counsel, examined the pleadings and was present at the trial; its secretary also had knowledge of the

proceedings and of the fact that judgment had been rendered therein; and, if the company had any proper defense to make to the action, it had sufficient opportunity to be heard, and, if it did not protect its rights therein either at the trial or later by an appeal, it should not now be permitted to profit by its negligence at the expense of innocent third parties.

A number of errors are assigned to the rulings of the trial court upon the evidence, all of which we have carefully considered but found none sufficiently serious to justify a reversal; and, therefore, under the condition of the record, the judgment is hereby affirmed.

*Affirmed.*