Bell, J.
This action grows out of a decree obtained in the District Court of the City and County of Denver jointly against S. N. Mitchell and The German American Indemnity Company, plaintiff in error herein, ordering and directing the above named, defendants in the action, to return to one L. K. Mulford, plaintiff therein, a certain two-thousand-dollar promissory note, together with a duly executed release of a certain trust deed securing said note; that they pay to him the sum of $50 as attorneys’ fees, and the sum of $150 for services rendered by him to said company as auditor; and that he have judgment for his costs. By stipulation signed by counsel of record for the parties, the defendants agreed to waive their right of appeal and were granted a sixty-day stay of execution, at the expiration of which, E. C. Harrell, president and general manager of the company, and said S. N. Mitchell, its treasurer, negotiated a loan of $2,550 from The State Mercantile Bank, defendant in error herein, for the purpose of satisfying the decree, at the demand of the plain *244 tiff therein, and gave as security for said loan a certain negotiable promissory note, dated April 19, 1912, signed by The German American Indemnity Company, by E. C. Harrell, Pres., and S. N. Mitchell, Treas., and by E. C. Harrell and S. N. Mitchell in their private capacities. Upon this note, the present action was instituted by the bank and resulted in a judgment in its favor in the sum of $3,008.97.
The defenses set up in the instant case by the defendant company, plaintiff in error, were that neither Harrell as president, nor Mitchell as treasurer, nor either of them in any capacity,, had any power or authority to execute the note in suit or any instrument purporting to- bind the company for the payment of money; that the note was the result of a conspiracy between them to defraud the company in the Mulford case by agreeing between themselves to permit an adverse judgment- to- be entered therein and to satisfy the same with the funds of the Company, thereby discharging the personal debt of Mitchell to- Mulford; that these facts were- known to the plaintiff bank at the time the loan was made; and that the note in suit was made out of the -d-ue and regular course of business and was without consideration.
Certain by-laws of the- defendant Company and proceedings of its board of directors were offered and received in evidence to prove the powers, duties and authority of its officers, and they show that, upon the resignation of said- Harrell as secretary and general manager of the company, November 24th, 1911, during the pendency of the Mulford-case, a rising vote of thanks was tendered him by the, board of directors of the company for his efficient services during the year previous, and he was immediately and unanimously elected president of the company to serve for the unexpired term; that, at the same time, the by-laws of the company were amended, to take effect immediately, and such amendments made it' the duty of the president “to sign all deeds, bonds, certificates of stock, checks and documents of any description of the company and to have general supervision of all meet *245 ings, either stockholders’ or directors’ meetings. * * * To secure the services and fix the remunerations of agents, employes, and assistant officers for the general promotion and welfare of the company (which latter duties were theretofore imposed upon the secretary and general manager) and shall have entire charge of the affairs of the company.” (The italics are mine.) The records and by-laws thus introduced further show that, by the amendment, the office of general manager was thereupon abolished, in so far as it was connected with the secretary, and that the same became merged in the office of the president; that the by-laws in conflict with said amendments were declared null and void as they previously read; and that the president, secretary and treasurer should constitute an executive committee to' act in the absence of the board of directors and to have .the same relation to the board that the vice-president does to the president. On January 9th, 1912, said Harrell and Mitchell were again elected president and treasurer of the company respectively.
The evidence developed the facts that Harrell and Mitchell had negotiated paper with the plaintiff bank at various times and on or about November 14th, 1911, had borrowed $1,000 on the company’s note, which was paid by the company’s check, February 6th, 1912, and payment thereof credited to the company; that The German American Trust Company also loaned the defendant company, August 19th, 1911, the sum of $1,000 on its note endorsed by said Harrell and Mitchell, which was paid October 30th, 1911; and that notes had been given to a bank in Trinidad. All of those transactions occurred previous to the date of the note in suit, but it seems that some of them, the loans at least, were never entered upon, the books of the defendant company, although an entry was made therein showing a deduction of one thousand and fifteen or twenty dollars from the account of the company at Thei German American Trust Company Bank, without any explanation being given therefor, and the acts and conduct of the officers in the matters were never questioned by the *246 company. There were 13 directors of the company, a majority of whom, as we understand the record, resided or were frequently out of the city, and it seems that full charge of the entire affairs of the company was placed in the hands of said Harrell, its president and general manager. At the time of making the loan in suit, the plaintiff bank had been dealing with the defendant company for a period of from 18 tO' 24 months, and Harrell represented to it that, as the highest officer of the company, he had authority to sell paper, negotiate loans and transact the business of the Company; and that the purpose of the loan was to take care of the Mulford judgment. Upon inspection and the strength of past transactions, in part at least, and the representations of Harrell, the loan was made, and the amount thereof, at Harrell’s request, was placed to the credit of his personal account and fully checked out by him in the satisfaction of the Mulford judgment, which was thereupon fully satisfied of rec'ord.
Shortly before the Mulford suit was instituted, his attorneys sent a letter to the defendant company therein and copies thereof to Wm. M. Bowman, E,. S. Shumway, E. C. Harrell and S. N. Mitchell, its officers and directors, stating that, if Mulford’s claim was not settled promptly, suit would be entered against the company and Mr. Mitchell. The case was pending from April nth, 1911, to December 5th, 1911, before trial, and, at the request of counsel of rec'ord for the defendants .therein, Mr. F. F. Schreiber also' appeared for the defendants at the trial and examined the pleadings. He was, at that time, a stockholder in the defendant company and subsequently, January 9th, 1912, was elected its general counsel and on May 20th, 1912, was elected president and general manager. The court held the case under advisement until February, 1912, when it made the decree hereinbefore referred to.
Dr. M. D. Brown was secretary of the defendant company from March, 1911, to May 20th, 1912, was a member of its board of directors and, together with Harrell and Mitchell, *247 constituted the executive committee, which, according to the
by-laws, occupied the same postion to the board of directors as the vice president does to the president. He testified that he “was around the office of the company a good deal, (and) was more or less familiar with its affairs;” that “E. C. Harrell was secretary and general manager (of the company) exercising general supervision and control over its finances and affairsthat he, the witness, knew of the Mulford judgment; and that said judgment was generally known of about the office of the company. It was further shown that he, Harrell, Mitchell, Schreiber, William A. Cook, W. N. Bowman and William Nolan, all directors of the defendant company during the pendency of the Mulford Case, had knowledge thereof; and that the fees of the attorneys of record for the defendant company therein were paid by the company’s check; but, notwithstanding all this knowledge on the part of at least seven of the directors of the company, its president, secretary, treasurer, executive committee and general counsel, the board of directors took no> action in regard to the matter nor questioned the position of the company as a defendant in the case. Neither did it repudiate the act of Harrell and Mitchell in executing the note in suit, although it was shown that, beside those two, William A. Cook, a director, and Dr. Brown, secretary and a _ director, knew that the'loan h:ad béen made to satisfy the Mulford judgment. Nor did anyone in behalf of the company repudiate the loan or the execution of the note, except Mr. Schreiber, who, on or about the 21st day of May, 1912, as' the then president of the Company, but without any direct authority from the board of directors in the matter, informed the plaintiff bank that he did not believe the officers of the company had any authority to execute a note of the kind in suit.
Therefore, from the foregoing recited facts, it is apparent that the directors of the defendant company had or should haye had full knowledge of the acts in controversy, and, whether through inattention or otherwise they permitted them *248 to stand, they are as much bound to those who were not aware of any want of authority in the officers in the matter as if the requisite power had been directly conferred: Beers v. Phoenix Glass Company, 14 Barb. 358, 361. One for whom another has, without authority, assumed to act, must not only disavow and repudiate what has been done, but must also give notice of such repudiation to> those to be affected thereby, if he would avoid the inference of assent, which the court or jury are otherwise at liberty to indulge: Union G. M. Co. v. Rocky Mt. Nat. Bank, 2 Colo. 565; Breed v. First Nat. Bank, 4 Colo. 481; Breed v. First Nat. Bank, 6 Colo. 235.
It cannot be successfully urged that the acts of Harrell and Mitchell were so concealed that the company or its directors had no knowledge thereof or were deceived thereby. The fact that Mitchell and the company were sued jointly was sufficient in itself to have put the directors on their guard and justify an inspection, which might have resulted in an exposure of any improper or unauthorized conduct on the part of its officers, Mitchell or Harrell; but, aside from this, the entry in the company’s books showing an unexplained deduction of over a thousand dollars in its bank account at The German American Trust Company, the several payments by Company checks hereinbefore mentioned, and the actual knowledge on the part of Directors Cook and Brown, of the loan in question and its purpose, were likewise sufficient to put the board on inquiry if it had used ordinary care in looking after the interests of the company.
The acts under consideration having been performed by Harrell and Mitchell with knowledge thereof on the part of a number of the directors and employes of the Company, and without any objection therefrom, it cannot and ought not to be heard to complain: Union M. Co. v. Rocky Mt. Nat. Bk., 2 Colo. 248-257; Union G. M. Co. v. Rocky Mt. Nat. Bk., 2 Colo. 565; Oro, etc., Co. v. Kaiser, 4 Colo. App. 219, 225, 226, 35 Pac. 677; Lit. Pitts. M. Co. v. Little Chief M. Co., 11 Colo. *249 223, 17 Pac. 760, 7 Am. St. Rep. 226; Beers v. Phoenix Glass Co., 14 Barb. (N. Y.) 358, 361; Chestnut St. Trust & Savings Fund Co. v. Record Pub. Co., 227 Pa. 235, 75 Atl. 1066, 136 Am. St. Rep. 890; Judell v. Goldfield Realty Co., 32 Nev. 351, 108 Pac. 455; Houston Land & Loan Co. v. Danley, (Tex. Civ. App.) 131 S. W. 1143; La Normandie Hotel Co. v. Security Trust Co., 38 App. D. C. 187; Talladega Ins. Co. v. Peacock, Adm’r, 67 Ala. 253, 263; Western Co. v. Bank, 23 Colo. App. 143, 146, 148-151, 128 Pac. 476; Whitaker v. Kilroy, 70 Mich. 635-638, 38 N. W. 606; Crowley v. Genessee M. Co., 55 Cal. 273, 276; Spangler v. Butterfield, 6 Colo. 356, 363; Bank v. Chapman, 122 Term. 415, 123 S. W. 641; Atwater v. Am. Exchg. Nat. Bk., 152 Ill. 605, 619, 38 N. E. 1017; McDonald et al. v. Chisholm, 131 Ill. 273, 281, 23 N. E. 596; Ford et al. v. Hill, 92 Wis. 188, 197, 66 N. W. 115, 53 Am. St. Rep. 902.
The note was executed on behalf of the company in order to raise sufficient funds to satisfy a joint and several judgment then standing against it in favor of Mulford, andi the moneys realized upon it were applied to this end; but it is claimed that the judgment was obtained in fraud and upon a claim owing personally by Mitchell and that, therefore, the note executed in satisfaction of said judgment was wrongfully executed by Harrell and Mitchell and was given without consideration. It has been shown, however, that part of the judgment was for a sum of money due as salary from the company to Mulford for services rendered as auditor and for $50 attorneys’ fees alleged to have been agreed upon between the parties in that action. None of the evidence in the Mulford case is abstracted, and, therefore, it is impossible, and, in fact, it is unnecessary, for us to determine or inquire into the merits of the judgment rendered therein. The proceedings leading thereto were known to the officers and a number of the directors of the company; Mr. Schreiber, who later became its general counsel, examined the pleadings and was present at the trial; its secretary also had knowledge of the *250 proceedings and of the fact that judgment had been rendered therein; and, if the company had any proper defense to make to- the action, it had sufficient opportunity to be heard, and, if it did not protect its righ’ts therein either at the trial or later by an appeal, it should not- now be permitted to profit by its negligence at the expense of innocent third parties.
A number of errors are assigned to the rulings of the trial court upon the evidence, all of which we have carefully considered but found none sufficiently serious to justify a reversal ; and, therefore, under the condition of the record, the judgment is hereby affirmed.

Affirmed.